Okay, you may proceed. May it please the court, I'm Christy Gibbons, I'm an assistant federal public defender in the Western District of Louisiana, and I represent the juvenile in this matter. This is a case where someone was found guilty of something that they were not charged with. Now, because we're talking about a juvenile matter, it's an adjudication of delinquency, but that's basically what we're talking about. We know that because in her ruling, District Judge Minaldi gave a very specific ruling on her verdict, and she said, this is a tough decision, not one of my favorite days on this job, but I think the evidence is sufficient to determine MTC a delinquent based on the events of February 23, 2015, in which he, in my opinion, had an intent to commit a sexual act, or actually was committing a sexual act, just not the one that everybody thought he was going to commit. What is the sexual act that everyone thought he was committing or was going to commit? Penetration. The juvenile was brought into federal court on a juvenile information, and that juvenile bill of information is very specific. It says that he knowingly engaged in and attempted to engage in a sexual act, as that term is 22462C. That is the sexual act of penetration with either fingers, penis, or an object. It's very specific in the juvenile information what he's charged with. The case proceeded to trial, and the government presented a case in opening, closing, rebuttal, and an attempt in allegations of penetration. This case was about penetration, and that's the sexual act everyone was talking about, and that's . . . He was not charged with that, though. He was, Your Honor. In the indictment or the information or whatever? It was in the bill of information. In the juvenile information, 22462C is a specific subsection . . . Charged with penetration. Charged with penetration. He was charged with attempt to penetrate. Attempt. The actual charge was engaging in or attempting, but it was . . . So there's multiple ways he could have penetrated. He could have penetrated digitally. He could have penetrated by use of a sexual organ. So the fact that the judge made these extraneous remarks, I mean, all that was encompassed within the original information, was it not? The act, the sexual act that he was charged with and that the government repeatedly said in the case was penetration. That's the sexual act. How he committed the sexual act could have been with different ways, but the sexual act is penetration. And the judge says he wasn't committing that sexual act that y'all are all talking about, meaning penetration, he was doing something else, and I'm finding him delinquent based on that. And that, Your Honor, is . . . I mean, it could have very well meant to say, well, rather than penetration by organ, he was attempting to penetrate her some other way. I mean, you could have read the judge's remark in a different context. I disagree, Your Honor. In combination with the bill of information and the trial transcript, where it is penetration, it's not . . . that's when anyone's talking about sexual act, they're talking about penetration. It's not, it was, you know, his penis or his fingers. The sexual act is penetration. The judge says it's not that sexual act. That's not what he was doing. He was doing something else. He wasn't trying to penetrate her. That's what the judge's words say. And that is a violation of his due process rights. The juvenile is entitled to due process. It's undeniable. There's Supreme Court law. He gets due process. And part of due process is notice and being afforded a meaningful opportunity to present a defense and prepare, and you have to know with specificity what the allegation is against you. And here the allegation was you committed the sexual act, you were attempting to commit the sexual act of penetration. That was what the defense was about. That's what the government was about. And the judge comes in and changes it at the time of the verdict by saying it wasn't penetration. It was something else. And that's fundamentally unfair, renders the verdict not only a violation of due process but also renders the proceedings fundamentally unfair. But you concede there was no objection at that time. There was no objection. I do concede that. However, I maintain that an objection would have been futile. And it would have been futile because the judge had taken a break before coming out. She says it's a tough decision. Her decision was well formed at that time. But no, but it was not, we don't know that it would be futile because you don't know if she could clarify that, oh, I mean that he's on his way attempting, or I'm finding him totally on this other thing, and you're right, I should, we should amend the information. This is, this, you don't know that the judge couldn't have cured it or would have realized her error had she not, if she had a chance to hear an objection. In order to cure it, she would have had to change her verdict. And at that point, that wouldn't, that couldn't have happened. Correct. She could say, oh, I can't do this. I forgot. And so, therefore, I can't find him that, but I do find he did this, and if they want to do an information at some point, you know, or . . . But she couldn't have said, oh, you're right, I'm wrong, it wasn't he was, you know, attempting to, you know, whatever. It was, it wasn't, it was penetration, you win, government. She couldn't do that. You can't . . . I thought she could clarify that it was attempt to penetrate, like what Judge Rodriguez was asking you about. But she . . . Okay. I mean, okay. Well, that's . . . Either here or there. What I'm struggling with is, I mean, the evidence the judge heard, I know it's disputed from the defense side, but what the judge heard was that the young girl's panties had been pulled down, that the juvenile was behind her. I mean, what other, what other conclusion other than some attempt to penetrate either by hand or by some other method could, had been contemplated here? I mean, what else could the judge be thinking? Well, she . . . I submit that her words were she was not thinking that it was penetration. And his pants were up, they were sweatpants, they were a little bit down, but his penis was not exposed. His hands were on the floor, so they were not near . . . But that's not the evidence she heard. The evidence she heard was that the juvenile had had his hands behind the girl's buttocks. That was at one time. The evidence she heard was that his hands were on the ground behind her. So again, you're disputing the evidence, but I mean, here there was some evidence to support the judge's conclusion, ultimate conclusion of intent to penetrate. But I submit that's not what her ultimate decision was. Her decision was, y'all keep talking about penetration, he wasn't trying to penetrate her. He was doing some, he was committing a sexual act, just not the one that everybody thought he was going to commit. That is a different sexual act of penetration. Sexual act could be a variety of ways under the statute, and it could be mouth to genitals, it can be penis to vagina, C is penetration, or it can be touching the genitals without, not through clothing. There are a variety of ways, but that's not what he's charged with. He's charged very specifically with penetration, and that's what the notice was, and that's what the case was about, and that's not what the judge found. And to go back to the issue of no objection, I would also submit that an objection would have been futile. But also, plain error, even under plain error, the juvenile still prevails on this claim. And that's because it's clear and obvious error for a judge to change a charging document on her own without any notice to anyone or the defendant. And that this, doing that, affected his substantial right. He has the right to due process. He has the right to present a defense. In this case, he went to trial and presented a defense on one thing, and he was found guilty on something else that he didn't present a defense on. How would he have changed his defense? The juvenile could have . . . there are several ways. First of all, it's almost impossible to answer that in the sense that we still don't know what he was defending against. So it's difficult to know what the defense would have been, but he could have . . . a very big part would have been his decision to testify. He might not have testified knowing what the judge was going to consider. He might not have needed to testify, and the government, in its brief, says, you know what, the fact that he did testify, you know, we should construe that against him. So that's huge prejudice. He wouldn't have . . . he might not have testified, depending on what the evidence would have been. And the cross-examination would have been different, argument would have been different, there are possible motions that could have been filed. We don't know, but there are many ways that defense would be different, and it's . . . the lack of a defense is the prejudice. He didn't even defend against the thing that the judge found him delinquent on. And so all of those things, and that goes to the integrity and fairness of the proceeding for the plain error. So even with plain error, the juvenile prevails for all of those reasons. And this also goes with . . . in line with the other claim under this section of the evidence, I submit that the judge herself found that the government did not prove their case. She found that, you know, y'all are all talking about one sexual act, which is penetration, but he was doing something else. That shows the insufficiency of the evidence right there. And with that, either way, the juvenile prevails. Either it was . . . his due process was violated by having to go to trial without . . . and being found guilty of something he wasn't charged with, or there was insufficient evidence for the charging document, and he was found not guilty of that, and the juvenile prevails. I'd like to now turn to the second issue, which is the registration of the . . . under the Sex Offender Registration and Notification Act. What is the . . . what other circuits or courts have dealt with, whether or not you could make this analogous Eighth Amendment claim that's, you know, similar to how juveniles have special protections there? You know, what's . . . what other courts have held this? Well, there were two circuits that have reached the issue.  They both have held that the Eighth Amendment is not violated by this. However, in the Fourth Circuit case specifically, the court relied on Smith v. Doe, which is a Supreme Court case, which is also what this court relied on in finding adults, SORNA. You know, you don't have punishment for SORNA. But the critical distinction with Smith, and why Smith is not applicable to a discussion about juveniles, is Smith dealt with adults. And in Smith, the court said, you know, you already had a public conviction. Anybody could have found that out. They can go to the courthouse. They can do anything they want. They can find out you have this sex offense, your employer, your housing, everybody. So we don't . . . we can't say that SORNA creates this new barrier for you because you already had a barrier. But Smith says we acknowledge that registration is stigma, that it creates these lasting problems and it's serious. We understand that. But we can't say that SORNA is your problem here. But the problem I have here is that, so the judgment of the trial court is he has to register until his 21st birthday. So that's all we have before us here. So I mean, isn't the juvenile's arguments sort of premature about lifetime registration? Doesn't he need to challenge that in some separate proceeding after he turns 21? Your Honor, I submit that jurisdiction is proper in this case under both sections. And the reason it turns on the punishment angle, but because SORNA is punishment as it applies to juveniles, that it's subsumed in the sentence and in the final decision. That that punishment makes it part of the sentence. It makes it part of the final decision. And because it's punishment, we get to the Eighth Amendment. Does the juvenile have any opportunity once he turns 21 to challenge his SORNA registration? The only thing the juvenile could do would be to bring a civil action. However, some ways that would not be advantageous for him by having to, you know, or wait until he like violates SORNA or anything like that, which he would not do. But there's nothing saying that you can't have both, and that the jurisdiction of this appellate court can't, you know, also go forward, and even though at some point the juvenile could have a civil action. The question assumed that the registration with SORNA only applied to the 21st birthday, but I don't see that in the judgment. The judgment just says you have to comply with SORNA. That is what... So where does it, does the judgment say you have to comply with SORNA until you're 21? Or it doesn't? It just says you have to comply with SORNA. It does just say you have to comply with SORNA. I think the understanding is under the Federal Juvenile Delinquency Act, any penalty only goes to the 21st birthday. But the effect of SORNA is for the rest of his life. Right. And so this is sort of a friendly question. The judgment doesn't say, it says you have to register for SORNA, and SORNA automatically triggers something for the rest of his life. Correct. So it's not, it's not remediated or lack of jurisdiction because 21, this particular judgment may be completed. That's correct, Your Honor. It's not, it doesn't solve it because they're at 21, it's not like when he turns 21 he doesn't have to register anymore. He is mandated to register for the rest of his life as based on this juvenile conviction. And under the Supreme Court decision where juveniles are treated differently for sentencing, juveniles are different, they're morally less culpable, you know, that's also the whole point of the Federal Juvenile Delinquency Act is we don't want them to have the stigma of a federal criminal conviction. We want to rehabilitate juveniles. And so with all of that, SORNA says it doesn't matter. You have to, we're going to throw you with the worst penalty that the adults can have, which is lifetime registration as SORNA, which is admittedly stigmatizing. It limits liberty. There's effects on employment, schooling, housing, travel. But you're asking us to create a circuit split. I am asking that this court have a ruling, yes, and that is what is proper. It can be a circuit split if that's what the law mandates. That's a hard thing to ask for. I understand that, but I also think that an Eighth Amendment violation for a juvenile who is based on something he did as a juvenile, he will have to register as a sex offender for the rest of his life, is the type of situation where this court should take a stand and have this declared unconstitutional, and if it results in a split, it results in a split. But this court should do the right thing in this case. I think my time is about up. Thank you, Ms. Givens. Mr. Phillips, which I must acknowledge is a former law clerk of mine, that doesn't give him any advantage, maybe a disadvantage. May it please the Court. My name is Forrest Phillips, and I represent the United States in this appeal. This court should affirm the District Court's adjudication of delinquency because substantial evidence supports the District Court's verdict. Moreover, the District Court's comment when issuing that verdict did not cause a constructive amendment to the information. Regarding the appellant's SORNA-related arguments, this court lacks appellate jurisdiction to consider that issue. But even if this court does have jurisdiction, SORNA's potentially lifetime registration requirement does not violate the Eighth Amendment's prohibition on cruel and unusual punishment. What does the government believe that the District Court was saying? Yes, Your Honor. The most plausible explanation for the District Court's comment is I think what the Court has already suggested here today, that the District Court judge was merely saying, well, I find you've committed a sexual act, perhaps not intended sexual intercourse. Perhaps it's intended digital penetration, or vice versa. But the fact of the matter is, as the defendant stated here today, both those acts are encompassed in the definition alleged in the information. If it wasn't in penetration, if it wasn't in C, but it was going to be in A or B, do you believe that would be appropriate, or should there have been an amendment of the information? Well, Your Honor, even if it were an attempt to change the information to a different definition under 2246, that still would not cause — that's still not going to entitle the defendant to relief here, and that's for a whole host of reasons, the first being that this comment had no formal weight as a finding of fact. The rules of criminal procedure offer parties an opportunity to request formal factual findings that might have the ability to cause an amendment to the filing document. That was not done here. Accordingly, it had no effect on the charging instrument at all, much less to change the specific definition alleged. But Your Honor, I also want to emphasize — Now, he was charged specifically with penetration, is that correct? Yes, Your Honor. And the district court — it's a trial before the district court, a bench trial. And the verdict does not find him guilty of penetration, is that correct? No, Your Honor. It does find him guilty of penetration. Specifically? Expressly? Well, Your Honor, to the extent that there's any uncertainty about that issue, that's why we're in the Plain Air Standard Review. Okay. So — But to answer my question, she did not expressly say that. Your Honor, she stated that the defendant was guilty of a sexual act, perhaps not the sexual act that everyone thought, but a sexual act nonetheless. You're riding on that. No, Your Honor. I'm simply stating that — Well, actually, you are acknowledging that that is her expression of the verdict she was rendering. Well, Your Honor, the verdict she was rendering, as I take the comment, is that she was saying that it's either attempted digital penetration or attempted sexual intercourse. She didn't say that. No, Your Honor, she did not. But that's — that's — the record reflects that that has to be what the comment meant. There's been no indication with the evidence offered in the record that any other sexual act was at play. She was delivering a verdict, right? A verdict of guilt. Yes, Your Honor. And yet she was very imprecise about what the verdict of guilt was. Yes, Your Honor. But even to the extent that there's any imprecision there, the fact of the matter is the defendant is not entitled to relief, absent a showing of prejudice. And the defendant has really not alleged how its defense would have — would have changed at all based on the alleged change to the information. Well, she makes the argument that, well, maybe he wouldn't have testified. That's a huge difference in defense. Yes, Your Honor. Yes, Your Honor. That is — that is a difference in defense. But the fact is that that comment does not cause a constructive amendment to the Bill of Information because the law regarding constructive amendments is inapplicable to juvenile proceedings. At most, this was a change in the factual basis for the prosecution. And — Well, that's still due process. I mean, it may not be subject to the usual rules of criminal procedure in terms of reconstructing the — reconstructing the charges. But still, I mean — I guess I have the problem with the whole due process argument. This is actually in your favor. It — his whole theory was she pulled down her panties, I had nothing to do with it, and I was trying to get her to put her panties back up, and that's when Mom walked in the room. I just don't see how, under any theory, this whole defense would have changed. I mean, am I reading the facts of this case wrong? No, Your Honor, that's correct. And to circle back to Judge Jolly's question, the four sexual acts contained in encompassed element of a sexual act. So even to the extent the district court's comment was an effort to change the sexual act from subsection A to subsection B, the fact is that this court's decision should be undergirded by, is there substantial evidence to support the finding of a sexual act under 2246? But because you chose, instead of saying A through C or D or whatever it goes to — Yes. Why aren't — shouldn't you be held to that? You've had your information do something precise. You can't then say, well, it doesn't really matter if it's A or B. Well, several reasons, Your Honor. First reason is the law regarding constructive amendments, the Fifth Amendment's guarantee to a grand jury-issued indictment is what entitles a defendant to per se reversibility when there's been a change to an indictment. That law does not apply here. The defendant does not contend it applies here. Instead, the defendant's asserting that there was a — the process was rendered somehow unfair as a result of the change, a violation of due process. It would be a Fifth Amendment violation of an indictment. I mean, that would certainly would be unfair in a process against a juvenile that's more through an information, wouldn't it? I mean, I don't think that helps you. Your Honor, it's — the question of prejudice goes hand in hand with the question of whether the process was rendered unfair. And as Judge Rodriguez suggested earlier, there's simply no indication that the alleged comment caused any prejudice here. There's evidence on the record the defendant was engaging or attempting to engage in a sexual act with the victim. To recount that evidence, the victim testified that the defendant pulled her pants down and with her on all fours, positioned himself behind her in a manner that's patently sexual and touched her exposed bottom. But that's not all the evidence we have. We also have evidence from the victim's mother who witnessed the scene. She testifies that when she walked in, she saw the victim on all fours, the defendant positioned behind the victim with his hands down beside the victim's hands, not assisting her in pulling up her pants, and that his pants were partially lowered, suggesting penetration. With that evidence on record, there's really no credible argument that — But she acknowledged she did not — she did not see him pulling. Yes. Yes, Your Honor. Which does not quite complete the argument that her testimony verifies penetration. Yes, Your Honor. But we're not dealing with whether penetration occurred. We're dealing with whether there's a substantial step towards the act of penetration. And this Court has said there's no strict litmus test for that. It's inherently factual. And this Court's review of that is guided by whether any reasonable finder of fact could have found that a substantial step occurred. But that's where the weirdness — I mean, the district court's statement, not that sexual act, is problematic because, you know, we're saying, oh, this was the step towards penetration. The district court's statement seems to say this is not penetration that they're going for. And that's — you know, if this was a jury verdict and they came back with something like this on their — they'd be sent back for some clarification. Why shouldn't this be sent back for some clarification? Well, if this was a jury, though, I mean, they would have just asked to be found guilty or not guilty of a sexual act. And so there wouldn't have been any underlying, you know, which sexual act. We never required juries to specify, you know, which sexual act occurred or required unanimity in which sexual act occurred. And so I'm not sure why we would be imposing upon the district judge any higher burden. But if the jury on its own, sui sponte, wrote some little note on the bottom of that, you bet that would have been investigated. And so why, if the district court does the same, why shouldn't we at least ask the district court if she was saying that? Could we do that? I'll try to ask — answer both these questions, starting with yours, Your Honor. The fact is that there was an opportunity to seek clarification about what this comment meant. And that opportunity was not taken, and it was not limited to an in-the-moment spoken objection. The defendant had — I believe it's two weeks from the rule's current procedure to file a post-verdict motion for acquittal under Rule 29. And, Your Honor, to your point, yes, in this specific circumstance — and again, we are under plain-error standard of view. So the question here is whether this error was clearly contrary to settled law at the time of appellate consideration. And to answer your question, Your Honor, the district court's comment really —  because there had been no request for formal findings of that. Let me give you a hard time, though. If it was my jury charge, though, to a jury, I would have laid out what the law was, and I would have laid out 2246C. And so they would have had to look at the sexual act being defined. What of this — we left it open. We don't know what the judge said, 2246A, B, C, D. We have no idea what she adjudicated guilt on. Does it matter? Well, Your Honor, it doesn't matter. And what we do know is that the district court had the information in front of it, which contained a specific definition that encompassed several sexual acts in the informal sense. One sexual act as a term of art. And again, not to belabor the point, but it appears that's what the district — that's the most plausible explanation for what the district court's comment meant, was it was using sexual act informally, saying, well, I find attempted sexual intercourse not digital penetration, or vice versa. There's substantial evidence for each, and this Court's decision should be guided by whether there's substantial evidence to support a verdict of adjudication of delinquency with respect to the charge stated in the information. Would the charge in the information be sufficient enough that if the judge was thinking in her mind he was going to engage in oral sex, would the charge have covered that or not? Your Honor, the charge would not have covered oral sex. We would be under question of whether that change in the factual basis might have caused prejudice, which, you know, under the harmless error standard. But the fact is that the opportunity — we're under plain error standard review, and the opportunity to object could have clarified exactly what the district court meant, and that opportunity was not taken here. Your Honors, I'd like to turn now to the SORNA-related issue. Please, if you have any other questions about that, we'll come back to it. Regarding the SORNA-related issue, this Court lacks appellate jurisdiction to consider whether SORNA's potentially lifetime registration requirement violates the Eighth Amendment. That's because the defendant doesn't object to the requirement that he register for SORNA. He objects to the requirement that he be required to register potentially for the duration of his life, at least for a period of 25 years. I don't think that that's accurate. I think that he's objecting to the whole thing because once you're in SORNA, you're in for a penny, in for a pound. It's—he's not—once you have to trigger SORNA, it's a problem because it makes it mandatory for the rest of your life. Yes, Your Honor. But the district court's sentencing judgment here was a period of supervised probation for the maximum amount allowed under the Federal Juvenile Delinquency Act. That's until an offender's 21st birthday. Right, but the judgment says you must register with SORNA, and it's that act that triggers this lifetime restriction. And Carmichael—it appears that Carmichael's actually harmful to your case, not helpful. In Carmichael, the government actually conceded that the SORNA requirement was part of the judgment. And so it's part of the judgment. And the only reason Carmichael didn't have jurisdiction was because it was a prison condition. There is no other—and so something had to happen was that there had to be a prison thing for the DNA in that case. Here, nothing has to happen in order to trigger the SORNA registration requirement. In fact, it is the judgment itself that triggers that. Can you respond? Yes, Your Honor. I respond in two respects. First and foremost, the defendant's SORNA-related argument here does have an inherently temporal quality. And he's disputing the potential act of registration for a period of 25 years, possibly life. And the judgment, which he is seeking to appeal from, stops on his 21st birthday. The basis for the Eighth Amendment claim here is that registering for potentially life, 25 years, is unduly harsh, cruel and unusual punishment. The district court's judgment does not cause that. The judgment has no effect past his 21st birthday. It does because it requires him to lifetime register. The judgment is what requires him to lifetime register. He has to register, and because of SORNA, it is a lifetime register. Your Honor, I would point the Court to a Supreme Court opinion in United States v. I believe it's Seale Juvenile Mail. I apologize. These names are all very similar. It is cited in the brief, though, in which I would call it dicta, but the Supreme Court states that the duty to register under SORNA is not a product past the defendant's 21st birthday, is not a product of the sentencing judgment. It's a product of SORNA itself. And that's in the context of mootness, Your Honor, not in the context of appellate jurisdiction. But it does have weight here in terms of ‑‑ Okay. Assuming arguendo that we disagree with you, and it is an assuming arguendo, why do you still win? Because, Your Honor, the fact is that SORNA is not cruel and unusual punishment under the Eighth Amendment. It's not even punishment under the Eighth Amendment. Have we held that in the context? You didn't tell me that. I'm sorry, Your Honor? This Court has not held that. The Fourth Circuit and Ninth Circuit have held that SORNA is not cruel and unusual punishment. Many courts have held that SORNA is not punitive under the ex post facto clause. And you're looking at a lot of the same considerations as to whether a law is punishment under the Eighth Amendment, as to whether a law is punitive with respect to the ex post facto clause. Fundamentally, SORNA is, as stated in the introduction to the statute, it's concerned with nonpunitive regulatory purpose, with ensuring law enforcement has information regarding sex offender's locations and ensuring the public can protect itself. Its purpose is not retributive. Its purpose is not to punish. And the effects the defendant cites in his brief are not so severe as to render it punishment. And there's really no case law to support the proposition that although SORNA is clearly not punitive with respect to adults, it might become punitive when applied to juveniles. The defendant's brief cites several Supreme Court decisions that suggest that in the context of the most serious punishments, we're talking life imprisonment without parole, that a sentence that might be appropriate, might not be cruel and unusual for an adult, might be rendered cruel and unusual when it applied to juveniles. It's a stigma carrying something from your childhood into your adulthood, a very serious stigma. Your Honor, that is a stigma. SORNA adequately accounts for that stigma, in fact. With respect to juveniles, SORNA doesn't even require that states publicly list juveniles' identities. A state sex offender registration statute might impose that. He will have to be enlisted, won't he? Excuse me, Your Honor? When he becomes a majority, it will automatically switch him, won't it? No, Your Honor. Will it always be in mind or will it always have initials forever? Your Honor, I would point the Court to the Attorney General's guidance cited in the brief on this issue. Now, it states that SORNA does not require states to disclose the identities of sex offenders required to register as a result of a juvenile adjudication. Not juveniles, but offenders required to register. As a result of something. Yes, Your Honor. They never have to be identified. And to the extent that the Court— Would he be precluded from employment in the future, working in schools, for example? Well, Your Honor, I don't want to state this as an absolute, but I can also say that the guidelines, the Attorney General's guidelines, state that state jurisdictions are not required to disclose sex offender registration status to a whole host of entities, including private employers, volunteer organizations, housing entities. I cannot say for a fact that includes governmental employers, Your Honor. I'd have to return to the statute, but it certainly suggests that there's greater protections for juveniles. And SORNA doesn't limit its acknowledgement that juveniles are different than adult offenders when it comes to requiring public disclosure of their identities. It also gives juvenile offenders this opportunity to remove themselves from the sex offender registration after a period of 25 years. That opportunity exists solely with respect to juveniles. Adult offenders aren't allowed this opportunity to demonstrate rehabilitation. That is exclusive to juvenile offenders and really is an acknowledgement that juveniles are different than adults and deserve an opportunity at rehabilitation because of their diminished culpability. Assuming the conviction still stood—I'm sorry. Assuming the conviction still stood and he turned 21 and assumed that this panel said that lifetime imposition of SORNA requirements was offensive, could the government have an opportunity later to try to reimpose lifetime SORNA requirements upon him when he does turn 21? Well, Your Honor, that's a difficult question, and I'm hesitant to answer it in absolutes right now, frankly. But the adjudication would be for juvenile conduct. This is apples and oranges, but the Supreme Court, with respect to the death penalty, has said that it prohibits that penalty with respect to conduct committed before an offender becomes of age, before the offender's 18th birthday. Whether that would apply with respect to SORNA, I think it would not, because SORNA is fundamentally different than capital punishment. It's fundamentally different than term of life imprisonment without parole. And with respect to the ex post facto clause, retroactive application of SORNA has been deemed to be constitutional. So I have one quick question about if we agreed with you that we lacked jurisdiction, then he could never challenge this, could he? Your brief pretty much acknowledges there doesn't seem to be a good vehicle for that. Direct appeal is not a good vehicle, Your Honor. He does have at least one means to challenge this in Federal court through the Declaratory Judgment Act. Similar assertions of a denial of constitutional right to Second Amendment cases. Immediately or upon turning 21? Well, Your Honor, he's required to register for SORNA, as you pointed out, right now as a result of the sentencing judgment. So that controversy is sufficiently right. We're not saying it's not. We're merely saying this Court lacks appellate jurisdiction because the Court's sentencing judgment can only go to his 21st birthday, by its own terms and by the terms of the Federal Judiciary. So you're asking us to say we don't have jurisdiction, but you should bring your separate lawsuit, which you've adequately preserved the right to bring. Yes, Your Honor. Right now, today. That's really not unique. I don't think this Court would allow a felon convicted of a nonviolent felony to bring a challenge to 922g's prohibition on possession of a firearm. Even though it also attaches, as soon as the verdict is rendered, and the district court's verdict in that case of conviction and sentence would require him not to have a firearm. Well, we do on those computer cases when they're out on probation and while they're in prison, they're still challenging those even though that hasn't come to pass yet. We let them challenge it right in the criminal case right then. Yes, Your Honor. Okay, Mr. Phillips. Thank you very much. Thank you. Ms. Givens, you have some time for a motion. Thank you, Your Honor. Really quickly, on the due process of the conviction or the adjudication of delinquency, the government says that this was really just a change in factual proceedings, and so it doesn't matter if she picked any of those other sexual acts. It's okay because that's just a minor thing. There's a Supreme Court case, the Sterone case. It's right on point. It's in the sense of the Supreme Court says no. If the government charges in a charging document, that was an indictment, but if the government charges someone with a specific fact regarding the element of the offense, and in that case it was Hobbs Act robbery, the indictment said it affected interstate commerce because of sand. He was importing sand. At trial, there was sand, and the government said, oh, also it went to a steel mill, and that was doing products that would go out in interstate commerce. So the jury instruction was you could do either one, and the Supreme Court said absolutely not. There's a specific essential element, and just like here, it's a specific subsection. You can't come in and say, okay, we can find you guilty of a different subsection. That case is directly on point. But this is a juvenile proceeding. It is, and so there was no grand jury indictment. However, the fundamental aspect of that, aside from the grand jury, is notice and due process, and the juvenile is entitled to a fundamentally fair proceeding. He's entitled to present a defense and know what he's up against. And that also goes to the due process argument, and, Your Honor, Judge Rodriguez, you noted it was an innocence defense. Absolutely. It would be an innocence defense no matter what, but you present an innocence defense depending on the facts. You ask different cross-examination questions. You decide whether the defendant is going to testify. You might make a completely different closing argument. You would. But there are different things to that defense if you know what you're defending against. And to go to the point of the government argues that the comment by the judge had no formal weight as a finding of fact, the judge has absolute discretion to make whatever findings she wants. And as you, Judge Jolly, said, this was an expression of her verdict. It wasn't just a finding of fact. Her verdict was, I find you delinquent based on a different thing than what you're charged with. And that's an absolute violation of due process and his notice and the fundamental fairness. And just very briefly on the SORNA issue, this court itself has noted that there's a serious stigma with sex offender registration. And it can't be overcome because the federal regulation says, you know what, we're going to let you – we're going to say – do I have permission to finish my sentence? Thank you. It can't be overcome because the federal court – the federal attorney general says, you know, it will say that some states don't have to make it public if they don't want to. They still can. SORNA does not prohibit it. The juvenile will lose his confidentiality that was protected as a juvenile in these proceedings. If I can ask you a quick question. So I know you made – or someone made before the district court the objection to registration even from the period up to 21. But it looked like in your briefing you gave up that argument and you were only complaining of a lifetime registration after 21. Am I reading – That's correct, Your Honor. Thank you. That is correct. Thank you, Your Honor. Thank you very much. And thank each of you for good arguments that assist the court in writing this opinion. That completes the arguments that we have on the oral.